## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

KASTEN BERRY INC.,

      Plaintiff,

      v.

WALLACE "WAYNE" STEWART,

      Defendant.

Case No. 24-2270-JAR

## MEMORANDUM AND ORDER

Plaintiff Kasten Berry Inc. ("Kasten") originally filed this removal action against Defendant Wallace "Wayne" Stewart ("Stewart") in Johnson County, Kansas District Court. The case was removed to this District on June 21, 2025.[1]  Plaintiff alleges three causes of action: (1) breach of contract (Count I); (2) breach of fiduciary duty (Count III); and (3) the faithless servant doctrine (Count IV).  Now before the Court is Kasten's Motion for Partial Summary Judgment (Doc. 100) on Count I, including damages arising from Stewart's breach in the amount of $253,453.94, and reasonable costs and attorney's fees.  This motion is fully briefed, and the Court is prepared to rule.  For the reasons stated below, the Court grants in part and denies in part Kasten's motion for partial summary judgment.

## I.    Legal Standard

Summary judgment is appropriate if the moving party demonstrates that there is no genuine dispute as to any material fact and that it is entitled to judgment as a matter of law.[2]  In applying this standard, the court views the evidence and all reasonable inferences therefrom in

---

[1] Doc. 1.

[2] Fed. R. Civ. P. 56(a); *see also Grynberg v. Total*, 538 F.3d 1336, 1346 (10th Cir. 2008).

the light most favorable to the nonmoving party.[3]  "There is no genuine issue of material fact unless the evidence, construed in the light most favorable to the nonmoving party, is such that a reasonable jury could return a verdict for the nonmoving party."[4]  A fact is "material" if, under the applicable substantive law, it is "essential to the proper disposition of the claim."[5]  An issue of fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the non-moving party."[6]

To prevail on a motion for summary judgment on a claim upon which the moving party also bears the burden of proof at trial, the moving party must demonstrate "no reasonable trier of fact could find other than for the moving party."[7]  Once the movant has met this initial burden, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial."[8]  Finally, summary judgment is not a "disfavored procedural shortcut"; on the contrary, it is an important procedure "designed 'to secure the just, speedy and inexpensive determination of every action.'"[9]

In deciding this motion, the Court is mindful that Stewart proceeds *pro se*; therefore, the Court must construe his pleadings liberally.[10]  However, the Court cannot assume the role of advocate,[11] or "construct a legal theory" on Stewart's behalf.[12]  Additionally, a *pro se* litigant is

---

[3] *City of Harriman v. Bell*, 590 F.3d 1176, 1181 (10th Cir. 2010).

[4] *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004).

[5] *Wright ex rel. Trust Co. of Kan. v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231–32 (10th Cir. 2001).

[6] *Thomas v. Metro. Life Ins. Co.*, 631 F.3d 1153, 1160 (10th Cir. 2011) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

[7] *Leone v. Owsley*, 810 F.3d 1149, 1153 (10th Cir. 2015).

[8] *Anderson*, 477 U.S. at 256.

[9] *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1).

[10] *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

[11] *Id.*

[12] *Whitney v. New Mexico*, 113 F.3d 1170, 1173–74 (10th Cir. 1997).

not excused from complying with the rules of the court and is subject to the consequences of noncompliance.[13]

## II.    Uncontroverted Facts

Stewart has not responded to the majority of Kasten's statement of uncontroverted facts. Although courts may not simply grant motions for summary judgment as uncontested,[14] under Fed. R. Civ. P. 56(e), the Court has several options where "a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c)." The Court may deem a fact undisputed,[15] and the Court may grant summary judgment "if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it."[16] Under Rule 56(e)(2), the Court will deem undisputed the facts presented in Kasten's summary judgment brief to the extent they are supported by the record and were not properly addressed by Stewart. With this in mind, the Court finds that the following facts are uncontroverted, stipulated to, or viewed in the light most favorable to Stewart as the nonmoving party.

Kasten is a Kansas incorporated business that supplies its customers merchant services, including providing merchants and customers with point of sale ("POS") systems, mobile payments, payment processing, counter terminals, billing and invoicing, payroll, and related products and services which are collectively referred to as "merchant services."[17] Kasten earns revenue when its merchant customers process credit card or other payment transactions using the

---

[13] *Ogden v. San Juan County*, 32 F.3d 452, 455 (10th Cir. 1994).

[14] *Reed v. Bennett*, 312 F.3d 1190, 1195 (10th Cir. 2002).

[15] Fed. R. Civ. P. 56(e)(2).

[16] Fed. R. Civ. P. 56(e)(3).

[17] Doc. 96 at 2.

payment processing terminals, software, and related services that are provided and installed by Kasten. These payment processing transactions are colloquially known as "residuals;" the residuals are a percentage of the payments that are processed by a given merchant customer.[18]

In May 2022, Kasten hired Stewart as a Sales Representative. Stewart's primary job was to sign up new customers to use Kasten's products and services and to maintain those accounts. In this position, Stewart managed 71 merchant customers. At the time of his hiring, Stewart and Kasten executed and entered into an Employment Agreement ("Agreement").[19] Kasten performed under the Agreement.

The Agreement prohibited Stewart from "divert[ing], or attempt[ing] to divert, directly or indirectly, any of the customers of [Kasten] or any of the business or patronage of such customers."[20] The Agreement also prohibited Stewart from soliciting or accepting "business from or [catering] to any of the customers of Employer."[21] Further, the Agreement provided:

> "that, for a period of two years following termination of employment with Employer, for any reason, Employee will not, for any other employer or on his/her own behalf, directly or indirectly cause any Merchant or Vendor to terminate or reduce its business relationship with Employer. For the purposes of this provision, a "Merchant or Vendor" is any person or entity that Employer

---

[18] Doc. 101-6 ¶ 18.

[19] Doc. 96 at 2.

[20] Doc. 101-1 ¶ 4(b).

[21] Doc. 101-1 ¶ 4(b). Specifically, the non-solicitation clause of the Agreement enumerated the following list of prohibited actions: "a. solicit, call upon, serve, accept business from or cater to any of the customers of Employer; b. divert, or attempt to divert, directly or indirectly, any of the customers of Employer or any of the business or patronage of such customers; c. call upon, influence or attempt to influence any of such customers to transfer their business or patronage from Employer to himself/herself or to any other person, firm or company engaged, in whole or in part, in a similar business; d. call upon, influence or attempt to influence any person, firm or company, including but not limited to, insurance brokers, agents or companies, with whom Employee had contact during employment with Employer and who has recommended to others the services of Employer during such employment, for the purpose of causing such person, firm or company to recommend the services of any other person, firm or company engaged in a business similar to Employer; e. receive compensation in any form as a result of soliciting, servicing, serving, doing business with, or calling upon any customer of Employer, or assisting any person, firm or company in such activities." Doc. 101-1 at 3.

transacts business with or transacted business with during the time period of Employee's employment."[22]

Additionally, the Agreement provided in pertinent part that Kasten shall be entitled to an award of its costs and reasonable attorney's fees should Kasten prevail in this action or a portion of this action. The contract also included a choice-of-law and forum-selection clause:

> This Agreement shall be construed and performed according to the laws of the State of Kansas and shall be binding upon the parties hereto. The parties agree that any action to enforce this agreement shall be brought in the District Court of Johnson County, Kansas, or in the federal district court for the District of Kansas, Kansas City Division."[23]

In or around April 2024, Stewart accessed and downloaded Kasten's confidential information that was connected to the merchant customers that Stewart worked with, including voided checks, credit card processing applications, and other confidential data. This confidential data is needed in order to create new payment processing applications for these merchant customers, which is a requisite step in moving those merchant customers' payment processing from Kasten to a competitor. On April 11, 2024, Kasten terminated Stewart's employment.

Shortly after terminating Stewart's employment, Kasten looked into why some of the merchant customers managed by Stewart had ended their business relationship with Kasten. Kasten's investigation revealed that Stewart misrepresented to the merchant customers that he was a broker of merchant services, and that Stewart diverted the merchant customers' business away from Kasten by installing new payment processing equipment of Kasten's competitor, PayCompass, LLC ("PayCompass"). Stewart began working as an independent contractor for PayCompass following his termination from Kasten.

---

[22] Doc. 101-1 ¶ 5.

[23] Doc. 101-1 ¶ 12.

Thirteen of Kasten's former merchant customers that Stewart previously managed at Kasten are now represented by Stewart through his employment relationship with PayCompass: (1) Dirty Rancho Houston Moto; (2) Northwest Auto Center; (3) C.E. Automotive; (4) Advanced Tech Automotive; (5) Precision Detail; (6) Honey B Ham; (7) Global Shading Texas; (8) Sixty Collision; (9) Mitts Tire Service; (10) Innovative Collision; (11) Lauren Mackenzie; (12) Concierge Auto; (13) Top Gun Auto.  Stewart installed and activated PayCompass's technology on these merchant customer's processing equipment, and Stewart earns revenue from PayCompass based on the processing volume of these merchant customers.

On or around August 12, 2025, Kasten sold a portfolio of future residuals that included accounts previously managed by Stewart that Kasten still serviced.  Kasten priced the sale of the portfolio based on the residuals of these merchants at a multiplier of 36 months of their average monthly residual.  Here, during their tenure with Kasten, the average monthly residuals of the above thirteen former merchants who did leave Kasten totaled $5,067.50. Under Kasten's policy, a portion of the residuals are paid to Sales Executives who are in good standing.  At the time of his termination, Stewart was not in good standing and ineligible to receive a portion of the residuals for the merchant customer accounts he had managed.

## III.    Discussion

Kasten moves for partial summary judgment against Stewart on three grounds: (1) liability on Count I for breach of contract; (2) that it is entitled to damages arising from Stewart's breach in the amount of $253,453.94; and (3) costs and reasonable attorney's fees associated from Count I.  As explained below, the Court grants partial summary judgment as to liability and entitlement to attorney's fees but otherwise denies summary judgment on the amount of damages arising from Stewart's breach.

A.        Liability on Count I

"[A] federal court sitting in diversity must apply the substantive law of the state in which it sits, including the forum state's choice-of-law rules."[24]  Kansas applies the Restatement (First) of Conflict of Laws in addressing choice of law issues.[25]  Kansas courts apply the rule of *lex loci contractus* to breach of contract claims.[26]  Under this rule, the law of the state where the parties made the contract controls.[27]  Further, in Kansas, a contracted choice of law provision controls all questions of law flowing from the parties' contract and any breach thereof.[28]  Here, the Agreement provides that Kansas law governs any dispute arising therefrom, and the parties agree that this case is governed by Kansas law.  Therefore, the Court applies Kansas substantive law below.

Under Kansas law, a party establishes breach of contract by proving five elements: "(1) the existence of a contract between the parties; (2) sufficient consideration to support the contract; (3) the plaintiff's performance or willingness to perform in compliance with the contract; (4) the defendant's breach of the contract; and (5) damages to the plaintiff caused by the breach."[29]  Here, the parties do not dispute the existence of a valid contract between them; accordingly, the Court need only address elements 3, 4, and 5.[30]

---

[24] *Boyd Rosen & Assocs., Inc. v. Kan. Mun. Gas Agency*, 123 F.3d 1351, 1352–53 (10th Cir. 1997).

[25] *See, e.g.*, *In re K.M.H.*, 169 P.3d 1025, 1031–32 (Kan. 2007).

[26] *Mirville v. Allstate Indem. Co.*, 71 F. Supp. 2d 1103, 1107 (D. Kan. 1999).

[27] *Id.*

[28] *Pepsi–Cola Bottling Co. of Pittsburg, Inc. v. PepsiCo, Inc.*, 431 F.3d 1241, 1255 (10th Cir. 2005) (applying Kansas law).

[29] *Stechschulte v. Jennings*, 298 P.3d 1083, 1098 (Kan. 2013) (citing *Com. Credit Corp. v. Harris*, 510 P.2d 1322, 1325 (Kan. 1973)).

[30] Doc. 96 at 2.

### 1.     Performance

It is uncontroverted that Kasten performed its obligations under the Agreement.[31]  Kasten and Stewart entered into an employment agreement on May 6, 2022.  Kasten employed Stewart from May 6, 2022, until his termination pursuant to the at-will provision of the Agreement on April 11, 2024.  However, the Court notes that Stewart, in his response to Kasten's statement of facts, asserts without citation to the record that:

> "[Kasten] stopped paying me my contractual residual based on their assumptions.  The amount of the average monthly residual of $5,067.50 was due to me monthly even after termination.  It has been 18 months since they stopped paying me based on their assumption.  This totals $91,215.  This does not include the bonuses that were owed to me."[32]

Stewart's assertion is not in response to Kasten's statement of uncontroverted fact 12, which specifically provides, with citation to an affidavit, that "Kasten Berry performed its obligations under the Agreement."[33]  Further, nowhere in the Agreement is there a provision that discusses payment of residuals to Stewart, nor does Stewart point the Court towards a contractual provision that encompasses his allegations.  The Court is unable to find support in the record for Stewart's notion that failure to pay residuals would result in non-performance by Kasten. Instead, the Agreement only requires Kasten to employ Stewart as an at-will employee, and the uncontroverted facts demonstrate Kasten employed Stewart until his termination, in accordance with the Agreement.  Accordingly, the Court finds Kasten performed under the Agreement.

---

[31] Doc. 101 at 5.

[32] Doc. 105 at 2.

[33] Doc. 101 at 5 (citing Doc. 101-6 ¶ 11).

2.      **Breach**

Kasten argues Stewart breached the Agreement through four actions: (1) Stewart downloaded and retained Kasten's property and confidential information; (2) Stewart diverted, accepted business from, and serves Kasten's customers during the restricted period and has admitted he provides competitive payment processing services to the thirteen merchant customers; (3) Stewart installed and activated payment processing equipment at Kasten's merchant customer locations; and (4) Stewart earns compensation paid to him by PayCompass based on the services he provided to Kasten's thirteen merchant customers.[34]  Stewart, through his response to Kasten's statement of facts, denies, without citation to the record, that he breached the Agreement, stating that he "was 100% loyal to [Kasten.]  The clients that followed me contacted me directly and asked to work with me exclusively."[35]

"'In considering a contract which is unambiguous and whose language is not doubtful or obscure, words used therein are to be given their plain, general and common meaning, and a contract of this character is to be enforced according to its terms.'"[36]  The cardinal rule of contract interpretation is that the court must ascertain the parties' intention and give effect to that intention when legal principles so allow.[37]  Where a contract is complete and unambiguous on its face, the court must determine the intent of the parties from the four corners of the document,

---

[34] Doc. 101 at 15–16.

[35] Doc. 105 at 1.

[36] *Wagnon v. Slawson Expl. Co.*, 874 P.2d 659, 666 (Kan. 1994) (quoting *Barnett v. Oliver*, 672 P.2d 1228, 1238 (Kan. Ct. App. 1993)).

[37] *Kay-Cee Enter., Inc. v. Amoco Oil Co.*, 45 F. Supp. 2d 840, 843 (D. Kan. 1999) (citing *Hollenbeck v. Household Bank*, 829 P.2d 903, 903–06 (Kan. 1992)).

without regard to extrinsic or parol evidence.[38]  With these principles in mind, the Court

considers the grounds Kasten cites as proving Stewart's breach of the agreement.

As an initial matter, it is undisputed that the non-solicitation clause of the Agreement

demands that an employee refrain from the following actions during employment and for a term

of two years following such period:

> "a. solicit, call upon, serve, accept business from or cater to any of
> the customers of Employer;
>
> b. divert, or attempt to divert, directly or indirectly, any of the
> customers of Employer or any of the business or patronage of such
> customers;
>
> c. call upon, influence or attempt to influence any of such
> customers to transfer their business or patronage from Employer to
> himself/herself or to any other person, firm or company engaged,
> in whole or in part, in a similar business;
>
> d. call upon, influence or attempt to influence any person, firm or
> company, including but not limited to, insurance brokers, agents or
> companies, with whom Employee had contact during employment
> with Employer and who has recommended to others the services of
> Employer during such employment, for the purpose of causing
> such person, firm or company to recommend the services of any
> other person, firm or company engaged in a business similar to
> Employer;
>
> e. receive compensation in any form as a result of soliciting,
> servicing, serving, doing business with, or calling upon any
> customer of Employer, or assisting any person, firm or company in
> such activities."[39]

Based on the undisputed facts, no reasonable jury could find other than for Kasten on breach.

While Stewart does deny that he breached the Agreement and was "100% loyal to [Kasten]," he

offers the Court nothing beyond this conclusory allegation that is devoid of citation to the record.

---

[38] *Id.* (citing *Simon v. Nat'l Farmers Org., Inc.*, 829 P.2d 884, 887–88 (Kan. 1992)).

[39] Doc. 101-1 ¶ 4.

This is not enough to create a genuine issue of material fact.[40]  A nonmovant "cannot create a genuine issue of material fact with unsupported, conclusory allegations."[41]  In responding to a motion for summary judgment, a party cannot rest on "ignorance of the facts, on speculation, or on suspicion" to escape summary judgment.[42]

The Court is cognizant of Stewart's *pro se* status and construes his filings liberally.[43] Nonetheless, Stewart may not rely on conclusory allegations to overcome his burden to establish that a genuine issue of material fact exists as to whether he breached the Agreement.[44]  The Court cannot assume the role of advocate,[45] nor can the Court "supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf."[46]  Here, the record supports the following facts that Stewart does not attempt to refute:

> Stewart misrepresented to the merchant customers that he was a broker of merchant services; Stewart diverted the merchant customers' business away from Kasten by installing new payment processing equipment of Kasten's competitor, PayCompass; Stewart began working as an independent contractor for PayCompass following his termination from Kasten; thirteen of Kasten's former merchant customers that Stewart previously managed at Kasten are now represented by Stewart through his employment relationship with PayCompass; Stewart installed and activated PayCompass's technology on these merchant customer's processing equipment; and, Stewart earns revenue from PayCompass based on the processing volume of these merchant customers.[47]

---

[40] *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998).

[41] *Tapia v. City of Albuquerque*, 170 F. App'x 529, 533 (10th Cir. 2006) (citing *Annett v. Univ. of Kan.*, 371 F.3d 1233, 1237 (10th Cir. 2004)).

[42] *Genzer v. James River Ins.*, 934 F.3d 1156, 1160 (10th Cir. 2019) (quoting *Conaway v. Smith*, 853 F.2d 789, 794 (10th Cir. 1988)).

[43] *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

[44] *Hastings v. Campbell*, 47 F. App'x 559, 560 (10th Cir. 2002).

[45] *Hall*, 935 F.2d at 1110.

[46] *Whitney v. New Mexico*, 113 F.3d 1170, 1173–74 (10th Cir. 1997).

[47] Doc. 101-6 ¶¶ 15, 16, 23; Doc. 101-7 ¶¶ 3, 7–11, 13, 14.

These undisputed facts clearly establish Stewart's breach of several provisions of the Agreement's non-solicitation clause.

Along with his opposition to Kasten's motion for summary judgment, Stewart submitted a statement of additional facts and an unsigned declaration. The Court notes that Stewart's additional facts and declaration (which are nearly identical) fail to cite support in the record. And Kasten's hearsay objections to these statements are sustained.[48] And, importantly, even if the Court admitted Stewart's additional facts and declaration, his own statements further support that he breached the Agreement. While ostensibly denying breach, Stewart instead explains *why* he was justified in accepting, catering, diverting, and Kasten's customers. For example, Stewart recounts his history with C.E. Automotive: "[o]nce I was terminated, *I reapproached them* to join my new company. This merchant left [Kasten] on its own."[49] Accordingly, the Court finds that no reasonable jury could find other than for Kasten on breach.

### 3.    Damages

Kasten seeks lost profits damages for Stewart's breach. The Agreement provides in part, "if Employer prevails against Employee, in whole or part, in any action to enforce this Agreement then . . . Employer shall be entitled to its costs incurred in the successful pursuit of such action or portion thereof, including a reasonable attorney's fee."[50] Damages recoverable for breach of contract are limited to those damages which may fairly be considered as arising, in the usual course of things, from the breach itself, or as may reasonably be assumed to have been within the contemplation of both parties as the probable result of the breach.[51]

---

[48] Fed. R. Civ. P. 56(c)(1)(A); Fed. R. Civ. P. 56(c)(4); F.R.E. 801; F.R.E. 802.

[49] Doc. 105 at 2 (emphasis added).

[50] Doc. 101-1 ¶ 10.

[51] *Kan. State Bank v. Overseas Motosport, Inc.*, 563 P.2d 414, 415 (Kan. 1977).

Kasten seeks $253,453.94 in lost profits arising from Stewart's breach.[52]  The Court agrees that Kasten's lost profits due to Stewart's breach are the proper measure of damages.[53] However, the Court finds that genuine issues of material fact still exist as to the exact calculation of lost profits.  A party claiming that it has been injured as a result of another's wrongful acts must show the extent of its injury—that is, the amount of damages it suffered—with *reasonable* certainty.[54]

Kasten calculates total lost profit damages in two distinct buckets before combining them to total $253,453.94.  Both calculations utilize as a multiplier the same valuation for residuals. Residual valuation in each bucket is calculated using the average monthly residual of the 13 merchant customers, which undisputedly totals $5,067.50.[55]  The first bucket calculates damages based on Kasten's inability to sell future residuals from the thirteen merchant customers Stewart previously managed at Kasten and then subsequently represented as a PayCompass contractor. The industry norm for calculating a portfolio value utilizes a multiplier of 30 to 40 months, depending on the financial stability of the merchant customers involved in the sale of future residuals and the overall attrition rate.[56]  Kasten provided the Court with a recent portfolio sale that utilized a 36-month multiplier; accordingly, Kasten deems reasonable a 36-month multiplier in the present calculation.[57]  Kasten argues the evidence of this recent sale supports their assertion that it is reasonably certain it would have included the 13 merchant customers in this

---

[52] Doc. 101 at 17–18.

[53] The Agreement contemplated damages in the form of lost profits arising from breach, and Stewart's solicitation, catering, acceptance, and diversion of Kasten's business are the proximate cause of the lost profits.

[54] *Wolfe Elec., Inc. v. Duckworth*, 266 P.3d 516, 529 (Kan. 2011).

[55] Doc. 101 at 10–12.

[56] *See* Doc. 101-6 ¶ 27.  Attrition rate can be understood as the number of merchant customers that stop processing payments over a measured period. *Id.*

[57] Doc. 101-6 ¶ 31.

sale, or, alternatively, would have continued to receive residuals from these merchant customers for at least 36 months. The uncontroverted record shows that a 36-month multiplier of the average monthly residual of $5,067.50 totals $182,430 in damages from Kasten's inability to include these 13 merchant customers in the portfolio sale.

The second bucket is a more difficult calculation. Kasten calculates loss of past profits based on the 15-month period (May 2024–August 2025) Stewart diverted and began providing payment processing services to the thirteen merchant customers, minus any residuals Kasten earned from these customers during the "the winddown of their business and payment processing relationship with Kasten."[58] While Stewart does not rebut this calculation in his opposition, Kasten cannot survive summary judgment simply due to Stewart's failure to adhere to the requirements of D. Kan. Rule 56.1(b)(1).

The undisputed facts do not support the 15-month multiplier Kasten provides, nor is Kasten's calculation reasonable.[59] Kasten asserts the 15-month period encompasses the timeframe since Stewart "began" diverting the thirteen merchant customers.[60] However, Kasten fails to cite to the record an itemization of the various times each merchant customer left Kasten. This is important because logically the average monthly residual cannot hold at the first month's rate as individual merchant's depart from Kasten's services.

The Court understands Kasten as asserting that all thirteen merchant customers departed Kasten by August 2025, but that each merchant left at an independent time between May 2024

---

[58] *Id.* at ¶ 23. Fifteen months multiplied by the average monthly residual of $5,067.50, minus residuals received amounting to $4,988.56, totals $71,023.94.

[59] *Wolfe Elec., Inc,* 266 P.3d at 529 (holding that a party claiming that it has been injured as a result of another's wrongful acts must show the extent of its injury—that is, the amount of damages it suffered—with *reasonable* certainty).

[60] Doc. 101 at 17–18.

and August 2025, following Stewart's April 2024 termination.  The temporal variation in departures would necessarily affect the monthly lost profit.  For example, the average monthly residual of a merchant customer who only departed in July 2025 should not be included in the lost profit calculation for lost profits in June 2024.  Kasten's calculation asks the Court to compound its profits.  The Court is unwilling and unable to do so.  Accordingly, fact issues persist as to the *method* of calculating Kasten's lost profits, but the damages are recoverable due to Stewart's breach.

    **B.    Costs and Attorney's Fees**

Finally, Kasten asks this Court for reasonable costs and attorney's fees.[61]  In Kansas, a prevailing party may recover attorney's fees if specifically authorized by statute or contract.[62]  The Court finds that Kasten is entitled to an award of reasonable attorney fees under the equitable remedies provision of the Agreement.  However, the Court defers ruling on the amount of attorney's fees that are reasonable until after the remaining claims in the case are disposed.  Once the remaining claims in this case are disposed, Kasten may file an application for reasonable attorney's fees, along with supporting documentation.

In sum, Kasten has met its summary-judgment burden of showing that no reasonable trier of fact could find other than in its favor on the contract claim, and that it is entitled to attorney's fees and costs under the contract.  Kasten's motion for summary judgment on this claim is therefore granted.  However, the Court finds questions of material fact persist as to the amount of

---

[61] Fed. R. Civ. P. 54(d).

[62] *See Harris Mkt. Rsch. v. Marshall Mktg. & Commc'ns, Inc.*, 948 F.2d 1518, 1526 n.3 (10th Cir. 1991).

damages.[63]  Accordingly, the Court deems the method in which Kasten calculates damages will proceed to trial.

**IT IS THEREFORE ORDERED BY THE COURT** that Kasten's Motion for Partial Summary Judgment (Doc. 100) is **granted in part and denied in part**.  Kasten's motion for partial summary judgment is granted as to liability on Count I and denied on the amount of damages.  Kasten's motion for partial summary judgment as entitlement to reasonable costs and attorney's fees is granted, but Kasten may file an application for reasonable attorney fees after the remaining claims in this matter are resolved.

**IT IS SO ORDERED.**

Dated: December 18, 2025

S/ Julie A. Robinson
JULIE A. ROBINSON
UNITED STATES DISTRICT JUDGE

---

[63] As a practical matter, the Court notes that Kasten acknowledges in the Pre-Trial Order (Doc. 96 at 8) that its damages calculation for Count I is the same as Count III, which is not moved on in the present motion.